IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 13, 2004

**STATE OF TENNESSEE v. DARREN PRICE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-02785     Joseph B. Dailey, Judge**

---

**No. W2003-01447-CCA-MR3-CD  - Filed February 9, 2005**

---

The defendant was found guilty of attempted first degree murder, attempted especially aggravated kidnapping, and two counts of aggravated robbery.  He contends on appeal that the evidence is insufficient to support the convictions, that the trial court erred in imposing consecutive sentencing, and that the defendant was sentenced in violation of Blakely.  We affirm the judgments of the trial court but remand for entry of corrected judgment forms to reflect that the two convictions for aggravated robbery merge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgments**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Robert Wilson Jones, District Public Defender, and W. Mark Ward and Trent Hall, Assistant Public Defenders, for the appellant, Darren Price.

Paul G. Summers, Attorney General and Supporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesdale, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A jury found the defendant, Darren Price, guilty of attempted first degree murder, attempted especially aggravated kidnapping, and two counts of aggravated robbery.  Following a sentencing hearing, the trial court sentenced the defendant to twenty-five years on the attempted first degree murder conviction, twelve years on the attempted aggravated kidnapping conviction, and twelve years on each of the aggravated robbery convictions.  The attempted first degree murder sentence was ordered to be served consecutively to the attempted especially aggravated kidnapping sentence.  The aggravated robbery convictions were ordered to run concurrently with each other but

consecutively to the other sentences. The total effective sentence was forty-nine years. The defendant timely filed his notice of appeal. He contends that the evidence is insufficient to support the convictions and that the trial court erred in imposing consecutive sentencing. We affirm the judgments of the trial court but remand for entry of corrected judgment forms.

## Facts

The victim, Kimberly Lambert, left her place of employment around 9:30 on the evening of November 10, 2001. As she entered her vehicle, a two-door Ford Explorer, she noticed a foul odor that had not been present in the vehicle earlier that day. She described the smell as a combination of bad body odor and hair product. At the time, she assumed the smell was coming from discarded food bags in the backseat. She rolled down the windows and drove to a nearby video store. The victim entered the store and returned to her vehicle a few minutes later. As she got back into the vehicle and was shutting the door, an arm reached from behind her seat and placed a twelve-inch knife to her throat. At the same time, she was grabbed by her ponytail and held back against the seat. A man's voice told her not to move. The man was later identified by the victim as the defendant, Darren Price. The defendant told her that he wanted her car and ordered her to drive him. The victim told him to take the vehicle; however, he insisted on the victim driving him to another location. The defendant continued to hold the knife to the victim's throat and restrain her by her hair as he gave her instructions on where to drive. He led the victim to a dark area on a dead end street and told her to park. The defendant then asked the victim if she had any money or credit cards. The victim took out her bank cards and laid them on the console. As the defendant momentarily pulled the knife away in order to retrieve the items, the victim opened the door and attempted to flee. Up until this point, the victim was unable to see the defendant's face. She made it to the rear of the vehicle before "[the defendant] was pretty much on top of [her]." As she turned around, "[the defendant] was right in [her] face." A struggle ensued, and the victim was pushed to the ground. She was on her knees looking up at the defendant as he repeatedly tried to stab her. As the victim fought back, she was pushed all the way to the ground. The victim was lying on her back facing the defendant as he continued to stab her while she fought back. Eventually, the victim was able to grab the knife by the blade and remove the weapon from the defendant's hand. During the struggle, the victim received numerous cuts which required stitches. After she was able to get the knife, the defendant punched her in the face as he stood over her. He "stood there for a second looking at [the victim]" and then ran away.

Robert Williams witnessed a portion of the incident between the victim and defendant. On the evening of November 10, 2001, he witnessed a sport utility vehicle park in front of an abandoned building near his residence. Williams saw a white female and a male fighting near the rear of the vehicle. He yelled at the man to stop, and the man ran toward him. As Williams stepped back into his residence, the man ran by and disappeared behind a building. Williams did not know if the man had a weapon and never got a good look at his face. Shortly after the incident, Williams told police that he thought the man was white. At trial, Williams was unsure whether the man was black or white. He described the man as dark complected. According to Williams, he may have assumed that the man was white because he noticed that the victim is white.

Officer James Kellum was dispatched to the scene sometime after 10:00 p.m. The officer found the victim crying and bleeding. She described the suspect as a black male, less than six feet tall, light complected, and wearing a baseball cap. She also stated that the suspect had a foul body odor. After conducting a search utilizing a dog and helicopter, the police were unable to locate the suspect that night. However, a day or two later, Sergeant Ralph Peperone received a memo indicating that a suspect matching the description of the perpetrator with "a very strong body odor" had been transported to a local hospital. On the morning of November 12, 2001, Peperone traveled to the hospital and came into contact with the defendant. He described the defendant as having a "strong body odor." Following a conversation with the defendant, Peperone thought that the man was a viable suspect. The sergeant prepared a photo spread containing the defendant's picture and contacted the victim. The victim picked out the defendant "virtually immediately."

The defendant testified that he was in the hospital recovering from an assault by his friend, Darrell Jarrett. According to the defendant, the assault occurred on November 10, 2001, between the hours of 10:00 p.m. and midnight. Therefore, he could not have attacked the victim. However, according to Sergeant Peperone, police records verified that Darrell Jarrett was arrested at 8:45 p.m. on November 10, 2001, and was not released until 3:00 a.m. the next day.

**Analysis**

Sufficiency

The defendant first contends that the evidence is insufficient to sustain the convictions. Specifically, he argues that the evidence is insufficient to identify him as the perpetrator of the offenses. When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant

then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

The defendant asserts that his conviction was based primarily on the eyewitness identification of the victim. He points out that the incident lasted only a few minutes, that it was dark outside at the time, and that the victim and her assailant were in the midst of a struggle. We are not persuaded by the defendant's argument. The victim picked the defendant out of a photo lineup only a few days after the incident occurred. Additionally, during the trial, she positively identified the defendant as her assailant. The victim testified that she had a clear look at the defendant while he was attacking her. Obviously, the jury chose to accredit the testimony of the victim and not that of the defendant. While the other witness's description of the assailant was somewhat vague, he also testified that he was approximately eighty to one hundred feet away when he saw the incident and that he did not get a good look at the assailant when he ran by. The defendant has failed to show that, after viewing the evidence in the light most favorable to the State, any rational trier of fact could not have found that the defendant was the perpetrator of the charged offenses beyond a reasonable doubt. This issue is without merit.

## Sentencing

The defendant also contends on appeal that his sentence is excessive. The defendant, in his original appeal, challenged only the length of the sentences imposed due to the consecutive sentencing. During the pendency of appellate review, a supplemental motion was made and approved to review the defendant's sentence in light of Blakely v. Washington, 159 L. Ed. 2d 403, 542 U.S. ____, 124 S. Ct. 2531 (2004). This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

The Supreme Court in Blakely applied the ruling in Apprendi v. New Jersey, 530 U.S. 466, 170 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to hold that facts which increase a sentence beyond the

statutory maximum, other than facts of a prior conviction, must be determined by a jury beyond a reasonable doubt. Blakely, 542 U.S. at ____, 124 S. Ct. at 2537.

The presentence report was the only evidence offered at the sentencing hearing. It indicated that the thirty-five-year-old, unemployed defendant had a record of two felony convictions and seven misdemeanor convictions since he was eighteen. The defendant claimed to have two children.

The trial court applied enhancement factors (2), the defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;" (7), that the personal injuries inflicted upon the . . . victim was particularly great;" (9), that the defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;" (10), that the defendant "possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;" and (13), that during the commission of the felony, the defendant willfully inflicted bodily injury upon another person." See Tenn. Code Ann. § 40-35-114(2), (7), (9), (10), (13) (2003). No mitigating factors were found by the trial court. The defendant's sentence for attempted first degree murder was increased to twenty-five years and to twelve years for attempted especially aggravated kidnapping and each of the aggravated robbery convictions. Unfortunately, the trial court did not allocate the enhancement factors but presumably applied them to all convictions.

Although the State contends that Blakely issues were waived, this Court has rejected this argument and holds that Blakely alters the interpretation of our sentencing statutes and establishes a new rule in Tennessee. State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 1053, at *56 (Tenn. Crim. App. at Nashville, Nov. 30, 2004).

Initially then, we conclude that pursuant to Blakely, all enhancing factors other than (2), the defendant's history of prior convictions, must fail in all of the defendant's convictions. However, this Court has previously held that Blakely errors are subject to harmless error analysis. See Chester Wayne Walters at *69.

The injuries received by the victim were multiple cuts to the hands, arm, and other body areas. These injuries required sixteen stitches and resulted in some scarring. The victim also suffered a black eye. The trial court applied enhancement factor (7), that the personal injuries received by the victim were particularly great. This Court is fully sympathetic to the victim in this regard; however, we cannot conclude that a jury would have found these injuries particularly great beyond a reasonable doubt.

The trial court applied enhancement factor (9), that the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. In making this finding, the trial court observed:

> [The defendant] certainly has a probation violation in 2001, and I notice that he has been arrested for bail jumping in Oklahoma and one other entry - a failure to appear misdemeanor in Shelby County for which he was convicted.

The bail jumping doesn't have a disposition on it, but the failure to appear, he received five days for -failure to appear for booking and processing, and that is that same type of - while that's not a release in the community, I guess in the sense of probation, it is - being issued a citation in that sense - being released back into the community and being told to show up, and he didn't show up, and he was charged and received a five-day sentence for that. But also the violation of probation, he received an eighty-day sentence at the penal farm for violating probation in June of 2001, it shows here. So that factor is clearly established.

The evidence of the defendant's conviction for violation of probation is sufficient to justify the application of this factor. We conclude that a reasonable jury would have found this enhancement factor applicable beyond a reasonable doubt. Therefore, it is harmless error.

The next enhancement factor applied was (10), that the defendant possessed a deadly weapon during the commission of the offense. The indictments for especially aggravating kidnapping and the two counts of aggravated robbery all included the use of a deadly weapon. Thus, the possession of the deadly weapon being a necessary element of these offenses, it could not be applied as an enhancement factor. The use of a weapon is not a necessary element of attempted first degree murder. The jury having found the use of a weapon in the remaining offenses leads us to the conclusion that this factor would stand for the offense of attempted first degree murder but could not be applied to the remaining counts.

The last enhancement factor found by the trial court was (13), that the defendant willfully inflicted bodily injury upon the victim. The proof that the defendant caused numerous cuts, bruises, and a black eye was overwhelming. We conclude that a reasonable jury would have applied this factor beyond a reasonable doubt and that it is harmless error.

In summary, under our analysis, factors (2), (9), (10), and (13) are applicable to the offense of attempted first degree murder and factors (2), (9), and (13) would be applicable to the offenses of attempted especially aggravated kidnapping and the two counts of aggravated robbery.

Having found error in sentencing by the trial court, the presumption of correctness falls and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 2000). The trial court correctly found no mitigating factors. In our view, the remaining enhancement factors are sufficient to justify the sentences as imposed by the trial court.

The defendant contends on appeal that the trial court erred in imposing consecutive sentencing. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The trial court found that criteria (2) (extensive criminal record) and (4) (dangerous offender) applied in this case. Therefore, the court ordered that the sentences for attempted first degree murder, attempted especially aggravated kidnapping, and aggravated robbery be served consecutively. If a court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

The defendant argues that the trial court erred in finding that he was a dangerous offender. After a thorough review of the record, we conclude that the court did make the required findings under Wilkerson. Additionally, the record adequately supports the finding by the trial court that the defendant is a dangerous offender. The defendant also argues that prior convictions should not be considered in finding that a defendant has an extensive record of criminal activity. He contends that only convictions for the present offenses should be considered. We conclude that the trial court did not err in considering the defendant's prior convictions in determining whether consecutive sentencing is appropriate in this case. See Pettus, 986 S.W.2d at 545 (using prior convictions to determine whether record of criminal activity is extensive). The record is clear that the defendant has two prior felony convictions and numerous misdemeanor convictions.

The defendant also challenges the authority of the trial court to order consecutive sentencing based on facts not found by the jury. This Court has consistently adhered to the position that neither Blakely nor Apprendi impact a trial court's imposition of consecutive sentences. See State v. Earice Roberts, No. W2003-02668-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 1049, **35-36 (Tenn. Crim. App., Nov. 23, 2004); State v. Michael L. Wallace, No. E2003-01719-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 1031, *21 (Tenn. Crim. App., Nov. 23, 2004); State v. Lawrence Warren Pierce, No. M2003-01924-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 994, *37 (Tenn. Crim. App., Nov. 9, 2004). Our supreme court observed in State v. Robinson, 146 S.W.3d 469, 499 n. 14 (Tenn. 2004), that "several courts" have held that Blakely and Apprendi do not apply to the decision to impose consecutive sentences. Accordingly, we find this contention by the defendant to be without merit.

**Conclusion**

The defendant has failed to establish that the evidence was insufficient and that his sentence was excessive. Based on the foregoing reasoning and the record as a whole, we affirm the judgments of the trial court. It is obvious that the two convictions for aggravated robbery should have merged. Although the State pointed out the merger of the convictions during the sentencing hearing, the judgment forms do not reflect merger. We remand for entry of corrected judgments that indicate a merger of the aggravated robbery convictions.

_____
JOHN EVERETT WILLIAMS, JUDGE